PETER A. JOHNSON *v.* JAMES TUTTLE and others.

1. The fact that a judgment was allowed to stand open for twenty-four years, when the creditor had under execution, and within his reach, property ample to pay the judgment, is not conclusive that it was satisfied; the indulgence may be explained.

2. When called upon by a *bona fide* purchaser or mortgagee, a creditor must account for personal property he has levied upon; he must show that it did not go to pay his judgment. The presumption of law is that it did.

This was a bill exhibited against the executors of Jacob Gray, who was a judgment creditor of James Tuttle and others, defendants, to foreclose their rights, and to sell the mortgaged premises.

The cause was put down for hearing on the bill, answer, replications and proofs.

The state of the case sufficiently appears in the opinion of the Chancellor.

*J. J. Scofield* and *P. D. Vroom,* for the complainant.

*A. Whitehead* and *W. L. Dayton,* for the judgment creditors.

THE CHANCELLOR. The complainant holds two mortgages made and executed by James Tuttle and wife.

On the 26th of May, 1834, James Tuttle was indebted to the complainant in the sum of twelve hundred and fifty dollars. For this amount Tuttle gave the complainant his promissory note of that date, endorsed by Noadiah P. Thomas, Joseph Bleything and Charles Ford. To secure its payment he and his wife executed a mortgage upon lands in Morris county, to one of the endorsers, Noadiah Thomas, and Thomas assigned it to the complainant.

On the 10th of December, 1839, Tuttle, in order further to secure the amount due on the said note, with his wife, ex-

ecuted another mortgage to the complainant upon other land in the county of Morris.

On the 20th of December, 1821, Jacob Gray recovered a judgment, in the Inferior Court of Common Pleas of the county of Morris, against James Tuttle, for the sum of two thousand three hundred and two dollars and seventy-two cents, besides costs. Since then Gray has deceased. The complainant has exhibited this bill against Gray's executors and others, defendants in the suit, to foreclose their rights, and to sell the mortgaged premises to pay his debt. The contest is in reference to this judgment. The complainant insists the judgment has been satisfied.

The complainant alleges that the age of the judgment, in connection with the fact that it was allowed to stand open for twenty-four years, when the creditor had under execution, and within his reach, property ample to pay the judgment, is evidence that it was in some way satisfied between the parties. And some other circumstances are urged to show that the court ought to come to this conclusion.

The indulgence which was shown by Gray to Tuttle is explained. There was a family connection between them : their wives being sisters. The terms on which they lived, and their business relations with each other, are sufficient to account for the fact of much leniency and indulgence on the part of Mr. Gray. But the executors show, by the dealings and settlements between Tuttle and Gray, and between Tuttle and themselves, as well as by the declarations of Tuttle, and numerous letters written by him, that Tuttle, up to the time of his death, which occurred after the bill was filed, considered and dealt with the judgment as open and unsatisfied. The complainant insists that the declarations of Tuttle, and his letters, are not admissible as evidence against the complainant. The rule that a party cannot offer his own declarations as evidence is not applicable. Tuttle and Gray are brought into this suit, as well adverse to each other as to the complainant. The rights which Gray is called upon to establish are adverse to Tuttle's. When Gray is called upon to establish his judgment against Tuttle, Tuttle's

declarations are competent for the purpose. Such declarations are not in favor of the party making them, but against his interest. There is no allegation in the bill of collusion, nor is there any evidence to excite the suspicion that the judgment was kept on foot to defeat the complainant, or for any other unlawful purpose.

It is shown that numerous payments were made on the judgment in large and small sums, from time to time, in money and otherwise. Questions were raised on the argument, as to the admissibility of some of the evidence, on both sides, in reference to these payments, as well as to the effect and sufficiency of it. The complainant insists that the payments actually proved, show the judgment paid. But all these questions will more properly and fairly come up before the master upon a reference.

There is one matter, however, connected with taking the accounts, which, I consider, it is proper I should decide now.

In the year 1821, an execution was taken out on this judgment, and, by virtue of it, the sheriff levied upon certain personal property belonging to the defendant. From the pleadings in the cause, as well as the evidence, I am satisfied that, both by the rules of law and equity, the personal property so levied upon was, *pro tanto*, a payment upon the judgment.

If the property so levied upon had been of sufficient value to satisfy the judgment, and so charged in the bill, and not denied, I should have declared the judgment satisfied, as respects the complainant's mortgages. In *Wood* v. *Toney*, 6 *Wend.* 562, a perpetual stay of execution was ordered, on the application of a *bona fide purchaser* of lands bound by judgment, where it appeared that an execution had been issued, and personal property of the defendant in the execution levied upon to an amount sufficient to satisfy the judgment. On a previous application, on behalf of the defendant in execution, the court had, under the circumstances of the case, refused to set the execution aside. The plaintiff in the judgment, or his assignee, had ordered a stay on the

execution, and the property had been left in the hands of the defendant. Without saying that this court will lay it down, as a rule, that where a judgment creditor has levied upon personal property sufficient to pay his judgment, he may not relinquish his lien upon it, for the benefit of his debtor, without putting in jeopardy his lien on the real estate, I feel clear in declaring the rule in equity to be that when called upon by a *bona fide* purchaser or mortgagee, the creditor must account for the personal property he has levied upon. He must show that it did not go to pay his judgment. The presumption of law is that it did. When the sheriff levies upon property, it is his for the special purpose of paying the execution in his hands. The defendant must be credited *pro tanto*, and the plaintiff must look to the sheriff. If the property has been disposed of, by the fraud of the debtor, or been appropriated to his own use, with the consent of the plaintiff, as between the plaintiff and defendant, their respective rights, as to any lien upon real estate, are not affected. As between the plaintiff and a *bona fide* purchaser, or encumbrancer, a different case is presented, and their equities must depend upon the particular circumstances of the case.

In the case of *Luther* v. *Onondaga C. P.*, 19 *Wend.* 79, on an application for a *mandamus* to the pleas, A., defendant in execution, fraudulently removed from the county, property which Luther, as deputy sheriff, had levied upon, and the sheriff was ordered to pay the amount of the execution. He paid it, and took an assignment of the judgment. The court allowed Luther to be subrogated in the place of the plaintiff, as against the defendant, but not as against the purchasers of his real estate, on subsequent judgments and executions.

In *Hayden* v. *The Agent of the State Prison at Auburn*, &c., 1 *Sand. Ch. Rep.* 195, the assistant Vice-Chancellor applied the rule very rigidly, and determined that the levy of an execution, upon sufficient personal property to pay it, is a satisfaction of the judgment as to junior encumbrances upon real estate, although, in consequence of the sheriff's indulgence to the debtor, and the plaintiff's neglect to enforce it

the levy actually produces nothing to apply on the execution.

In this case, the bill alleges that certain personal property was levied on, and specifies the property, and prays that the judgment creditor may be compelled to raise and satisfy the amount found due on the judgment, by first selling the personal property levied on, before resorting to the mortgaged premises. It is true the complainant does not state his rights in the matter with very great precision, but there is enough in the bill to give him the relief to which he is entitled under the circumstances. The defendants admit in their answer the fact of the levy on the personal property. They make the execution and accompanying levy exhibits. They do not set up in their answer that they have not had the full benefit of the personal property levied upon, nor do they give any account of its disposition. It was taken by the sheriff. It was in his custody, and beyond the control of the defendant in execution, for the purpose of paying the judgment. The presumption of law is that it was so appropriated. The complainant having shown that the judgment creditor took the property to pay his judgment, it must be credited on the judgment, unless the defendants show some reason why it should not be. It may be true, as was suggested on the argument, that the levy was made subject to other liens which claimed the property, or that the judgment creditor converted it to his own use. But the law presumes no such thing; and if any reason exists why the amount of this property, which the creditor took by process of law to pay the judgment, was not so appropriated, it should have been set up in the answer, and been proved. Jacob Wilson, the sheriff who had the execution, says he made the levy and returned the execution. He thinks he did nothing with the execution after the levy until 1840, when he advertised and adjourned from time to time until he had notice that there was an injunction. He says he does not know what became of the personal property that he levied on. It was not very common for him to let the property remain without sale, without orders from the plaintiffs. Upon such evidence, can

there be a doubt that, if the question was between the plaintiff and defendant in execution, the defendant would be entitled to a credit to the amount of the value of the property levied on? The complainant stands on much better ground. He is a *bona fide* purchaser for a full consideration. The injunction issued in this case did not stay the sale of the personal property; it only enjoined the sheriff from selling the mortgaged premises.

As to the release to Rodgers, and the sale by Tuttle to Howell, I do not see that the judgment creditor can be prejudiced by them. The complainant in his bill sets up no equity in reference to these matters, and no question in relation to them is put in issue by the pleadings. They are introduced into the answer for the purpose of showing that Tuttle dealt with the judgment as open and unsatisfied.

Let there be a reference to a master to take an account of what is due to the complainant on his mortgages, and also the amount due on the judgment, with directions to credit on the judgment the proceeds of the sale of the personal property levied on; or if there has been no sale, then the value of the property, except such part of it as the defendants can show was not appropriated to their judgment, and the benefit of which they were deprived, through no negligence or default of their own or that of the sheriff.

CITED *in Schanck* v. *Arrowsmith*, 1 *Stock.* 329; *Banta* v. *McClennan* 1 *McCar.* 123.